UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEROD BUTLER,

    Plaintiff,

v.

CITY OF DETROIT, et al.,

    Defendants.

_____/

Case No. 2:16-cv-14272

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [21]**

Plaintiff LeRod Butler brought suit under 42 U.S.C. § 1983 against the City of Detroit as well as three named Detroit police officers—Radames Benitez, Joi Gaines, and David Meadows—and certain unknown officers.[1] The case arose from a search that occurred at Butler's home on December 30, 2015, during which he claims that the Individual Defendants violated several of his clearly established constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments. Defendants filed a motion for summary judgment and Butler filed a response. The Court has reviewed briefs and finds that a hearing is unnecessary. E.D. Mich. LR 7.1(f). For the following reasons, the Court will grant the motion in part and deny it in part.

**BACKGROUND**

The events of the case arise from Defendant Benitez's sworn affidavit. According to the affidavit, surveillance and intelligence collected in October and November 2015

---

[1] The Court will refer to the named and unnamed officers as the "Individual Defendants."

revealed that, for months, a man ("Subject #1") had been selling cocaine and heroin out of his home at 9542 Burnette. ECF 21-3, PgID 162. Benitez explained that Subject #1 stashed drugs and money at a neighboring house, 9561 Burnette, and would meet buyers down the street from the addresses, on the corner. *Id.* In some cases, a deal would occur at the 9542 Burnette address. *Id.*

On November 9, 2015, Benitez investigated things for himself. For 30 minutes, he sat "in an undercover capacity" near 9542 Burnette. In the affidavit, Benitez detailed the complex comings and goings of Subjects 1 and 2 and others at the time. The driver of a white van gave a bag to Subject #2, who then deposited it at the 9542 address. Subject #2 then drove a brown van to Butler''s house, 12011 Bramell—about eight miles away—and entered the dwelling. *Id.*; ECF 22, PgID 206. Subject #2 reemerged minutes later and drove off in the brown van. Benitez tried to follow him, but failed. ECF 21-3, PgID 163.

Butler's address is never again mentioned in the affidavit. Benitez swore that on December 27, 2015, he sat "near the target location" and observed another suspected drug deal. Although the affidavit had earlier defined the "Target Location" as 12011 Bramell, the term does not seem to refer to the Bramell address when discussing the December 27 surveillance. The paragraph describing the surveillance on that date discusses events at the Burnette addresses which would be impossible to observe from Bramell Street. *Id.* And Benitez admitted in his deposition that references to the target location were not actually referring to 12011 Bramell, but rather, "when I say target location, it means I was near 9542 Burnette." ECF 22-3, PgID 255–56.

Nevertheless, on December 30, 2015, on the basis of the affidavit, a Wayne County magistrate signed a search warrant for Butler's house on Bramell Street. The Individual Defendants were assigned to the Major Violators crew 2909 that day and they executed the warrant. ECF 21, PgID 130; ECF 22, PgID 207. They claim they announced their presence and their purpose but received no response. Thus, Defendant Meadows ordered forced entry through the front door. ECF 21, PgID 132. Butler's alarm company then called to inform him of an intrusion, so he returned from a nearby car wash and found several police vehicles and officers outside his home with a search already underway. *Id.*; ECF 22-1, PgID 235, ¶¶ 16–17.

The parties dispute what happened next. Defendants contend that Butler "approached the crew and stated that he resides at the location and identified the weapons, ammo, bullet proof vest, C.P.L., as his property along with an unmarked orange pill bottle containing 81 white pills with 'IBU 800' stamped on it and $3,702.00 in U.S. Currency from the residence." ECF 21, PgID 132. Meadows confiscated $1,640 found on Butler's person. *Id.* Butler, however, swore in his affidavit that when he arrived, he informed the officers that he was the homeowner, showed them his ID, told them about the weapon he was carrying and that he had a C.P.L. ECF 22-1, PgID 235, ¶ 22. According to Butler, the officers proceeded to confiscate his pistol and wallet. Then, despite his full cooperation, the police handcuffed him and slammed him against a wall, which re-injured preexisting neck and back conditions. *Id.*, ¶¶ 23–26.

The search continued in the house and in the surrounding area. Butler contends that his garage door and alarm system were damaged, *id.*, ¶¶ 29–30, and he also claims that the trunk to his car, parked nearby, "had obviously been searched," *id.*, ¶ 32. Benitez

was specifically asked in his deposition whether he searched the vehicle, and he demurred, "[n]o, not me personally," but he conceded that such a search was "procedure" though "[a]s to who exactly, I don't know[.]" ECF 22-3, PgID 256. According to Butler's affidavit, the officers "demanded to know" where in his home he kept his "money and guns,"—and he told them. ECF 22-1, PgID 236, ¶¶ 33–34. Meadows counted the money in front of Butler and a "Notice of Seizure and Intent to Forfeit" listed the amount confiscated at $3,702. *Id.*, ¶ 35; ECF 21-3, PgID 175. Butler signed the notice and agrees that the listed amount is indeed what Meadows counted out, but he claims some of his money went missing. ECF 22-1, PgID 236, ¶¶ 35–36. Butler also asserts that he only signed the notice at Meadows's insistence. *Id.*, ¶ 37. Ultimately, Butler was not detained beyond the time of the search.

Butler went to Providence Hospital the next day. According to a hospital report, he complained of back and neck pain and his past medical history was "[s]ignificant for hypertension, chronic back and neck pain." ECF 21-6, PgID 183. The doctor told him that his blood pressure was high and he received a final diagnosis of "[a]cute exacerbation of chronic low back and neck pain." *Id.* at 184. An additional Report dated nearly two months later indicates that he was still complaining of high blood pressure from increased stress at that time and also that he has a history of hypertension. *Id.* at 185.

No charges were ever filed against Butler; he filed his present complaint later that year, on August 16, 2016, in Wayne County Circuit Court. Defendants removed the case on December 7, 2016 and filed the instant motion after the close of discovery.

## STANDARD OF REVIEW

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met the initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," and must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Additionally, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then "there can be no 'genuine issue as to any material fact'" and the motion should be granted. *Celotex*, 477 U.S. at 322-23.

A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact over which a genuine dispute exists is material "'if proof of that fact would have effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties.'" *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting *Johnson v. Soulis*, 542 P.2d 867, 872 (Wyo. 1975)). In making those determinations, "the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (1987).

## DISCUSSION

The Complaint lists three counts. Count One alleges that the Individual Defendants violated Butler's rights under the First, Fourth, Fifth, and Fourteenth Amendments. Count Two specifically alleges that the Individual Defendants used "excessive force" in violation of established constitutional rights, though no amendment is specifically identified in that section. Count Two, therefore, seems entirely subsumed by the allegations in Count One, and the Court will consider the two together. Count Three is lodged against the City and alleges municipal liability for the officers' actions.

I. <u>Claims Against Individual Defendants (Counts I and II)</u>

Butler sued the Individual Defendants under 42 U.S.C. § 1983 for violations of his clearly established constitutional rights to be free from use of excessive force under the Fourth Amendment to the United States Constitution; to procedural and substantive due process and fair treatment during search, seizure, arrest, and prosecution under the Fourth, Fifth, and Fourteenth Amendments; to be free from wrongful search and seizure under the Fourth Amendment; and to be free from retaliation for protected speech under the First Amendment. The Court will take each claim in turn.

A. Excessive Force

42 U.S.C. § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Accordingly, "[t]he first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Id.* at 140. Here, the complaint identifies the excessive force claim as explicitly arising under the Fourth

6

Amendment, and therefore the claim "should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989). Reasonableness analysis "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quotation marks omitted). Factors to be considered in the analysis "includ[e] the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," and the determination "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

To hold an individual officer liable for a § 1983 violation based on a Fourth Amendment claim of excessive force, a plaintiff must demonstrate that the officer "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (citation omitted).

Defendants have moved for judgment on the excessive force count because, they assert, "Plaintiff was never arrested, battered or assaulted as testified by any of the Defendant Officers." ECF 21, PgID 139. They conclude that their testimony, paired with Butler's comments to medical staff "that he was detained for an hour and a half" but "never stated to the Doctors or the Police that there was excessive force used against him," *id.* at 139–40, defeats the excessive force claim. Defendants are partly correct; Butler has failed to introduce evidence supporting his excessive force claims against Defendants

7

Benitez and Gaines, but he has indeed introduced sufficient evidence to support the claim against Defendant Meadows.

Butler's sole evidence in support of his allegation of being slammed into the wall is his sworn affidavit. In it, he swore that "Sgt. Meadows and others [] slammed me against the wall face first, re-injuring my neck and lower back," and "Sgt. Meadows then insisted that I continue to stand against the wall face first, despite the pain in my neck and lower back." ECF 22-1, PgID 235, ¶¶ 25, 27. The evidence stands in contradiction to Benitez's deposition testimony that he could see Meadows at all times and that Meadows did not use force on Butler. ECF 22-3, PgID 254–55. And it contradicts the Police Department Crime Report from the incident that said "force not used." ECF 21-4, PgID 178. Plainly, therefore, a genuine issue of material fact precludes summary judgment as to Meadows. *See Moran v. Al Basit LLC*, 788 F.3d 201, 206 (6th Cir. 2015) ("a plaintiff's testimony alone may be sufficient to create a genuine issue of material fact thereby defeating a defendant's motion for summary judgment").

But the same cannot be said for the other Individual Defendants. In describing the event, Butler names only "Sgt. Meadows" or "Sgt. Meadows and others." ECF 22-1, PgID 235, ¶¶ 25, 27. At summary judgment, a plaintiff alleging excessive force must identify an offending officer. *See, e.g.*, *Skover v. Titchenell*, 408 F. Supp. 2d 445, 451 (E.D. Mich. 2005) (citing *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002)). Although Butler's statements clearly implicate Meadows, they fail to identify the other officers. Accordingly, there is no genuine issue of material fact concerning direct excessive force committed by Defendants Benitez and Gaines.

As noted above, an officer who did not personally use excessive force against a plaintiff can still be held liable as a supervisor or for failing to intervene. But the other two routes for an excessive force claim also fail as to Benitez and Gaines. Butler has neither pled nor provided evidence that Benitez or Gaines supervised Meadows, and thus, the supervisory theory cannot be sustained. As for the theory that Benitez and Gaines might have owed Butler a duty of protection but failed to stop the use of force against him, "courts have been unwilling to impose a duty to intervene where . . . an entire incident unfolds 'in a matter of seconds.'" *Ontha v. Rutherford Cty.*, 222 F. App'x. 498, 506 (6th Cir. 2007); *see also Kowolonek v. Moore*, 463 F. App'x 531, 539 (6th Cir. 2012) (affirming summary judgment when the relevant period lasted only minutes or less); *Amerson v. Waterford Twp.*, 562 F. App'x 484, 490 (6th Cir. 2014) (holding that an observing officer "had no opportunity to prevent the alleged use of force, given that the alleged events took place quickly and without any forewarning"); *Caldwell v. City of Southfield*, No. CV 13-15283, 2015 WL 7016336, at *9 (E.D. Mich. Nov. 12, 2015) (granting summary judgment because a span of less than a minute was not sufficient for the officer "to perceive the alleged excessive force and develop and implement an intervention strategy"). Here, Butler alleges he was shoved against a wall one time, so there would have been no opportunity for other officers to intervene. The affidavit declares that "Sgt. Meadows insisted that I continue to stand against the wall face first, despite the pain in my neck and lower back," but notably, there is no evidence that Meadows or the other officers were aware that Butler's preexisting condition was causing him pain as he merely stood in place. *See* ECF 22-1, PgID 235, ¶ 25, 27.

Because Butler has failed to introduce evidence evincing a genuine issue of material fact as to his excessive force claims against Defendants Benitez and Gaines, they are entitled to summary judgment on the excessive force claim.

B. Immunity

Meadows contends that he is entitled to immunity. He asserts that "[a]ll of the evidence adduced during discovery establishes that the Defendant Officers legitimately and lawfully executed a valid search warrant," and "[p]laintiff has not established that Defendant Officers violated any of the decedent's clearly established constitutional rights, nor has Plaintiff established how such rights were violated," ECF 21, PgID 138. Meadows concludes he is therefore entitled to qualified immunity.

Butler has in fact identified a clearly established right that he alleges was violated— namely "[t]he right to be free from use of excessive force (4th Amendment)." ECF 1-1, PgID 10. The Sixth Circuit has repeatedly held that "the right to be free from excessive force is clearly established," and therefore that "whether we grant qualified immunity in a particular case depends upon whether the officer did, in fact, use excessive force (*i.e.*, force that was not objectively reasonable)." *Kostrzewa v. City of Troy*, 247 F.3d 633, 642 (6th Cir. 2001) (citation omitted). Within the reasonableness inquiry, the Sixth Circuit has explained that "[t]he general consensus among our cases is that officers cannot use force . . . on a detainee who has been subdued, is not told he is under arrest, or is not resisting arrest." *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009); *see also, McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (holding the need for force to be "nonexistent" when the Plaintiff was "handcuffed" and "not trying to escape or hurt anyone").

Here, neither side disputes that Butler was both detained and cooperative (*See* ECF 22-3, PgID 256; ECF 22-1, PgID 235, ¶¶ 24, 26. Accordingly, any force used against him would be unjustified and in violation of his Fourth Amendment right to be free from excessive force. As noted above, there is a genuine dispute of material fact over whether Meadows did in fact use force against Butler while he was handcuffed and not under arrest or trying to escape. Meadows is therefore not entitled to immunity.

C. Procedural and Substantive Due Process and Fair Treatment During Search and Seizure

The Complaint alleges that the Individual Defendants violated Butler's "right to procedural and substantive due process and fair treatment during search, seizure, arrest and prosecution (4th, 5th and 14th Amendments)," ECF 1-1, PgID 10, ¶ 30. The Complaint essentially makes four specific claims:

(1) Benitez "produced false and misleading information to receive a search warrant, that without such information, would not have met the standard of probable cause" (¶ 32);
(2) Defendants used excessive force to enter the house and damaged both the home and personal property within it (¶ 33–34);
(3) Defendants searched Butler's vehicle without his permission (¶ 36);
(4) Defendants seized Butler's money and failed to return some of it (¶¶ 37–38).

*Id.* The allegations form the basis of four separate constitutional claims—one under the Due Process Clause of the Fourteenth Amendment[2] and three under the Fourth Amendment.

---

[2] Although the Complaint alleges violations of the Due Process clause under both the Fourteenth and Fifth Amendments, the latter does not apply to state or local governments. *See Newsom v. Vanderbilt Univ.*, 653 F.2d 1100, 1113 (6th Cir. 1981). Thus, the Fifth Amendment is inapplicable here.

Defendants move for summary judgment on the claims, but provide no specific argument. *See* ECF 21, PgID 138 (merely noting that "[a]ll the evidence adduced during discovery establishes that Defendant Officers legitimately and lawfully executed a valid search warrant."). Butler's response brief confirms that his arguments about the manner of the search and the seizures are before the Court, ECF 22, PgID 203, but his argument is limited only to challenging Benitez's affidavit and its impact on the validity of the search warrant. Like Defendants, Butler fails to meaningfully discuss the alleged seizure or the manner in which the search was conducted. And Defendants neglected to file a reply brief. Accordingly, Defendants' motion is comprehensive of all the claims and all the evidence. The Court will therefore limit consideration of the Butler's claims to the exhibits attached to the motion and response in support.

1. Fourteenth Amendment—Due Process

A plaintiff filing a § 1983 claim for "the deprivation of a property interest without procedural due process of law . . . must plead and prove that state remedies for redressing the wrong are inadequate . . . the plaintiff must attack the state's corrective procedure as well as the substantive wrong." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). In fact, plaintiffs pursuing due process claims, "may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative procedures and remedies to address [the] due process violations." *Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004) (citation omitted).

Here, as in *Vicory*, "the plaintiff has neither alleged nor shown any significant deficiency in the state's remedies." *Vicory*, 721 F.2d at 1066. Accordingly, summary

judgement must be granted for all Individual Defendants as to the Due Process claim for the damaged and unreturned property.

2. Fourth Amendment—The Underlying Search

Butler asserts that the search itself violated his rights under the Fourth Amendment. He alleges that "Defendant Benitez produced false and misleading information to receive a search warrant that, without such information, would not have met the standard of probable cause." ECF 1, PgID 10, ¶ 32. He further claimed that Defendants searched his car, which was outside the scope of the search warrant, without his consent and "in wanton and intentional disregard" of his rights. *Id.* at 11, ¶ 36.

Turning first to the search warrant, "[a]n investigator may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003); *see also Peet v. City of Detroit*, 502 F.3d 557, 570 (6th Cir. 2007) (affirming that "the law is clear that an officer may be held liable under 42 U.S.C. § 1983 for an illegal search or seizure when the officer knowingly and deliberately, or with a reckless disregard for the truth makes false statements" material to the determination of probable cause (quotation marks omitted)). The Sixth Circuit has established a two-prong test that a plaintiff must meet "[t]o overcome an officer's entitlement to qualified immunity." *Vakilian*, 335 F.3d at 517. Under the test, a plaintiff must make "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Id.* Additionally, "[w]here qualified immunity is asserted, the issue of probable cause is one for the court." *Id.* at 517.

Here, taking the record in the light most favorable to Butler, he has made a "substantial showing" that Benitez acted in deliberate falsehood or with a reckless disregard for the truth in his affidavit. In his deposition, Benitez admitted that the affidavit was incorrect in its identification of 12011 Bramell as the "target location." He swore: "when I say target location, it means I was near 9542 Burnette." ECF 22-3, PgID 256. Benitez admits that it "obviously was" the Burnette location he was referencing when he repeatedly named the "target location." *Id.* at 255. As Butler swore, 12011 Bramell is "over eight miles away from the Burnette addresses, and it is absolutely impossible to see the Burnette addresses from my home." ECF 22-1, PgID 234, ¶ 11.

Turning to the second prong, this Court must determine "whether probable cause existed based on [Benitez's] affidavit supporting his application for the arrest warrant, if we set aside the allegedly false representation and focus only on the . . . other allegations in the statement." *Kuslick v. Roszczewski*, 419 F. App'x 589, 593 (6th Cir. 2011). Setting aside the references to the "target location," the only mention of 12011 Bramell was on November 9, 2015. ECF 22, PgID 238. Benitez observed Subject #2 drop off what Benitez believed to be narcotics at 9542 Burnette and then drive, without the mysterious bag, to Butler's house and enter it, only to reemerge and drive away minutes later. ECF 22-2, PgID 238. But even this is disputed—Butler swore that "[a]t no time" did anyone matching Suspect #2's description "come to or enter my home[.]"ECF 22-1, PgID 233, ¶ 7.

Regardless of the validity of Butler's protest, one incident alone would not be sufficient to establish probable cause. To establish probable cause for a search, "an affidavit must show a likelihood of two things: first, that the items sought are 'seizable by virtue of being connected with criminal activity'; and second, 'that the items will be found

14

in the place to be searched.'" *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978)). In cases like this one, however, the two inquiries are collapsed into one, as "[t]he nexus between 'criminal activity' and the item to be seized is 'automatic[]' when the object of the search is contraband.'" *Id.* at 355 (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)). Searches for illegal drugs "need[] to satisfy only the second showing for a valid warrant: 'a fair probability' that the drugs 'will be found in a particular place.'" *Id.* The Benitez Affidavit, absent references to the "target location," does not satisfy the showing.

The only remaining evidence in the affidavit is that "Subject #2" once visited 12011 Bramell for a few minutes shortly after engaging in what appeared to be a drug deal. ECF 22-2, PgID 238. There is no evidence that Subject #2 brought any contraband from that deal into 12011 Bramell, much less anything else to indicate the continued presence of drugs in the home. *See id.* Without the "target location" reference to 12011 Bramell, the search warrant lacks probable cause. Summary judgment is therefore denied as to Officer Benitez, but granted to all other Individual Defendants on the claim of wrongful search of 12011 Bramell and seizure of property from that address.

Defendants have likewise failed to justify searching Butler's car. Even if the search warrant were valid, it authorized only the search of vehicles "within the curtilage." ECF 22-2, PgID 239. The "curtilage" of a house is limited to "the area immediately surrounding a dwelling house" that is "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *United States v. Dunn*, 480 U.S. 294, 300–01 (1987). Benitez admitted that Butler "parked across the street"—a zone beyond the curtilage. ECF 22-3, PgID 256. Although "exigent circumstances" can

15

sometimes justify the warrantless search of a vehicle, see Cardwell v. Lewis, 417 U.S. 583, 595–96 (1974), those types of circumstances are not apparent here. Accordingly, a search of the car would very likely have exceeded the scope of the warrant.

The Individual Defendants, however, are entitled to summary judgment because Butler has failed to allege or provide any evidence that shows which Defendant was responsible for the search of his vehicle. Benitez testified that he did not search the vehicle, but that doing so was "procedure." *Id.* Butler has provided no evidence—such as other deposition testimony—to reveal who did perform the alleged search. Any jury finding against a particular defendant would be based on mere speculation, and Butler has therefore presented insufficient evidence to survive summary judgment on the claim. *Cf. Thornton v. Spooner*, 872 F.2d 1029 (6th Cir. 1989) (Table). Summary judgment for the Fourth Amendment claim of illegally searching Butler's car must be granted for all Individual Defendants.

3. Fourth Amendment—The Execution of the Search

Butler also challenges the manner in which the search was conducted. Although courts consistently recognize that some measure of property damage naturally follows a search, a constitutional violation may arise when damage was unreasonable under the circumstances. *See Hill v. McIntyre*, 884 F.2d 271, 278 (6th Cir. 1989). Here, the Complaint alleges that the police broke Butler's screen, front, and garage doors with a battering ram, threw his personal items and appliances onto the floor, permanently and severely damaging many of them, and removed portions of walls, tearing electronic cables from "secure positions on and within" the walls. ECF 1-1, PgID 7–8, ¶¶ 13–17. If those claims are supported by evidence, a jury question would arise as to reasonableness. *See Hill*, 884 F.2d at 278.

But again, Butler has offered no evidence to bolster his claims. His response brief contains only three exhibits: the search warrant and its supporting affidavit, Butler's own affidavit, and the deposition testimony of Benitez. Butler's affidavit states that during the search he "could hear officers trashing [his] house," and that afterward he "reviewed [his] security camera footage of the incident, and documented the damage done" to the garage door, alarm system, vehicle and home—but the record is devoid of any such documentation. ECF 22-1, PgID 235, 237, ¶¶ 28, 38. It is similarly devoid of evidence linking any specific officer to the alleged property damage. Meadows is the only officer named in the affidavit, but Butler does not allege that Meadows had any involvement in the actual destruction of the property. Rather, he contends only that another officer (who goes unnamed) came up to Butler, and "in the presence of Sgt. Meadows indicated that he would destroy [Butler's] alarm[.]" ECF 22-1, PgID 236, ¶ 29.

Liability under § 1983 "must be based on more than respondeat superior[.]" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). A supervising official must have "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays v. Jefferson Cty.*, 668 F.2d 869, 874 (6th Cir. 1982)). Butler has not made a sufficient showing, so summary judgment in favor of all the Individual Defendants is appropriate.

4. Fourth Amendment—The Seizures

Butler claims that not all of the seized money was returned. But he does not provide any evidence or allegation that the police generally, much less any specific police officer,

actually had possession of the allegedly missing funds. He does not allege how much money has not been returned to him, or affirmatively identify that the police took it; the Complaint simply alleges that "some of Plaintiff's money was never returned to him." ECF 1-1, PgID 9, ¶ 26. His affidavit likewise states only that the amount of money Meadows counted out was "not the amount of money which was missing." ECF 22-1, PgID 238, ¶ 37. As the Supreme Court has found, "a party opposing a properly supported motion for summary judgement 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 248 (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)). Plaintiff has failed to set forth specific facts as to the allegedly unreturned money in this case. Summary judgment must therefore be granted for all Individual Defendants as to the Fourth Amendment claim for the damaged and unreturned property.

  D. Retaliation for Protected Speech

Finally, Butler claims that the Individual Defendants violated his "right to be free from retaliation for protected speech (1st Amendment)." ECF 1-1, PgID 10, ¶ 30(d). Butler does not explain what protected speech he uttered that prompted retaliation, what constituted the retaliation, who participated in it, and or any other evidence regarding the claim. Summary judgment must be awarded to the Individual Defendants.

  II. <u>Municipal Liability Against the City (Count III)</u>

Count Three of the Complaint is brought exclusively against the City of Detroit. It alleges that the City acted with deliberate indifference to Butler's constitutional rights and the rights of others similarly situated by establishing, promulgating, implementing, and maintaining a long list of customs and policies. ECF 1-1, PgID 12–13. Butler alleges that the policies proximately caused his injuries. *Id.*

Under the Supreme Court's decision in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978), "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." In determining liability, "local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the government's official decision making channels." *Id.* at 690–91. Here, the only possible "custom" of which Butler provides any evidence is a custom of searching vehicles in conjunction with search warrants for houses. Thus, to begin with, summary judgment for the City is warranted for all other claims.

As to the vehicle search, Benitez admitted in his affidavit that "[i]t's procedure" for an officer to have searched Butler's vehicle when he already stated that Butler's vehicle was "across the street" from the house they were searching and therefore not included in the search warrant. ECF 22-3, PgID 256. The Sixth Circuit has strongly implied that an officer indicating that something is "standard procedure" can meet the *Monell* standard for establishing a "custom." *See Langston v. Charter Twp. of Redford*, 623 F. App'x 749, 761–62 (6th Cir. 2015). In *Langston*, the Sixth Circuit rejected a § 1983 claim when a municipality had violated a state statute rather than any constitutional right. But the court explicitly rejected the contention that an officer's statement about the act being "standard procedure" could not meet the *Monell* standard—particularly when there was no evidence that the officer making the statement was new to the department or unfamiliar with the policies. *See id.* Here, Benitez's statement is sufficient to establish a genuine issue of

19

material fact as to whether the City had a custom of unlawfully searching vehicles. Summary judgment for the City as to the vehicle search claim is unwarranted and the City's motion will be denied as to that claim.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for summary judgment [21] is **GRANTED IN PART AND DENIED IN PART**.

Summary judgment on Counts I and II is **GRANTED** in favor of Defendant Gaines.

Summary judgment on Counts I and II is **GRANTED** in favor of Defendant Benitez as to all claims except the claim relating to the search of the house arising from the allegedly false statements made in his affidavit.

Summary judgment on Counts I and II is **GRANTED** in favor of Defendant Meadows as to all claims except the claim relating to the use of excessive force against Plaintiff.

Summary judgment on Count III is **DENIED** as to Defendant City of Detroit; Plaintiff may proceed on the narrow ground described in the Opinion.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: April 27, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 27, 2018, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager